J. EDWARD BROOKS, State Bar No. 247767
OGNIAN GAVRILOV, State Bar No. 258583
ELIEZER M. COHEN, State Bar No. 302248
GAVRILOV & BROOKS
2315 Capitol Avenue
Sacramento, CA 95816
Telephone:    (916) 504-0529
Facsimile:    (916) 473-5870
Email:        ebrooks@gavrilovlaw.com

Attorneys for Plaintiffs
EDMUND RYAN and
PATRICIA HOFFMAN

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EDMUND RYAN, and individual, and PATRICIA HOFFMAN, an individual,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>SPECIALIZED LOAN SERVICING, LLC, a Delaware Limited Liability Company, and DOES 1 through 25, inclusive,<br><br>　　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**<br><br><br><br>**JURY TRIAL DEMANDED** |

## PARTIES

1.　　Plaintiffs EDMUND RYAN AND PATRICIA HOFFMAN (hereinafter "Plaintiffs") are husband and wife and they live in Sacramento County, at 6731 Stanley Avenue, Carmichael, California ("Home"). At all relevant times, Plaintiffs have lived in the Home as their primary, principal residence. The mortgage and loan modification for Plaintiffs' residence in Carmichael is the subject of this lawsuit.

2.　　Plaintiffs are informed and believe and thereon allege that Defendant SPECIALIZED LOAN SERVICING, LLC, is a Deleware Limited Liability Company (hereinafter "SLS") that finances home purchases, refinances existing mortgages, and executes loan modification agreements nationwide. At all times mentioned herein, SLS was doing business in

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

Sacramento, California, among other states. SLS, through a series of purchases from other lenders, purchased the Plaintiffs' mortgage for their home in Sacramento County, as well as the Plaintiffs' existing 2010 Loan Modification Agreement for their home located in Sacramento County. SLS is now the Plaintiffs' lender and holds the Plaintiffs' current mortgage, as of January 1, 2016.

3. Plaintiffs are unaware of the names and capacities of DOES 1 through 25 and sues them as DOES 1 through 25, inclusive. Plaintiffs will amend this action to allege these DOE Defendants' names and capacities when ascertained. Defendant SLS is responsible for the occurrences, injuries, and damages herein, in that the damages were directly and proximately caused by Defendant SLS's acts and omissions. Each Defendant herein was the agent of each of the remaining Defendants, and in doing the things alleged herein were acting within the course and scope of their agency and DOES 1 through 25 are referred to herein as "Defendants."

4. Plaintiffs are informed and believe, and thereon allege, that at all times herein, Defendants, and each of them, were the agents, servants, employees, and/or joint venturers of their co-defendants and were, as such, acting within the scope, course, and authority of said agency, employment, and/or joint venture and that each and every Defendant, as aforesaid, has ratified and approved of the acts of its agent. The Defendants are jointly and severally liable to Plaintiff.

## JURISDICTION AND VENUE

5. Plaintiffs bring their complaint under federal diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

7. Venue is proper in the United States District Court – Eastern District of California (Sacramento Division) as the acts upon which this action is based occurred in substantial part in, and the agreement was between the parties was entered into in Sacramento County, California.

## GENERAL ALLEGATIONS

8. On January 28, 2009, Plaintiffs were granted a loan modification on their existing home mortgage by their lender at the time, GMAC Mortgage, which provided for a new interest rate (5%) and a new monthly payment amount ($2,421.13), effective in February of 2009. (**Exhibit A**). On April 20, 2009, Plaintiffs filed for Chapter 7 bankruptcy (**Exhibit B**). The Plaintiffs subsequently were discharged from that bankruptcy on February 2, 2010 (**Exhibit C**), including the 2009 loan

modification.

9. After their discharge from bankruptcy, Plaintiffs requested another loan modification from GMAC in April of 2010. GMAC agreed and signed the loan modification agreement on June 30, 2010, Loan Number 07113297836 (**Exhibit D**) (hereinafter, referred to as the "2010 Loan Modification"). This 2010 Loan Modification set forth the Plaintiffs' monthly mortgage payments at $2,128.74, with an interest rate of 4.5% per annum, to remain at these fixed rates through the year 2040.

10. The bankruptcy trustee issued a statement on August 3, 2012 requesting payment to GMAC in the amount of $70,691.87, which Plaintiffs paid to bring their loan current. On September 1, 2012, Plaintiffs began making the mistaken monthly overpayments of $2,421.13, instead of $2,128.74.

11. The Plaintiffs' mortgage was then transferred among various loan servicing companies before the loan ended up with Defendant SLS. Plaintiffs received a letter dated May 10, 2013 from GMAC, informing them that their loan from GMAC was being sold and transferred to Owen Loan Servicing. Plaintiffs then received another letter dated June 14, 2013 from Owen Loan Servicing, informing them that their loan from Owen Loan Servicing was being sold and transferred to Residential Credit Solutions. Plaintiffs then received yet another letter dated December 11, 2015 from Residential Credit Solutions, informing them that their loan from Residential Credit Solutions was being sold and transferred to Defendant SLS, Plaintiffs' current lender, effective January 1, 2016. (**Exhibits E, F, & G**)

12. Plaintiffs subsequently received a May 11, 2017 letter from SLS stating that Plaintiffs were eligible for a Loan Modification from SLS. (**Exhibit H**) However, Plaintiffs rejected that loan modification offer from SLS because the offer was financially unfavorable to the Plaintiffs. Plaintiffs informed SLS that the 2010 Loan Modification (made previously with GMAC) had better terms and so they wanted to continue with it. In August of 2017, Plaintiffs received a Notice from SLS informing Plaintiffs that their Interest-Only payment period was expiring on October 1, 2017. (**Exhibit I**)

13. Plaintiffs then decided to review their 2010 Loan Modification and their payment

3.

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

history under it and discovered that they had been overpaying each month. Plaintiffs had been making payments of $2,420.64 (the 2009 loan modification amount, discharged in bankruptcy) since September 1, 2012, (60 overpayments as of that time) when the original 2010 Loan Modification only called for a $2,128.74 monthly payment. This meant that Plaintiffs overpaid $291.90 a month, for a total at that time of $17,514.00. Plaintiffs notified SLS on August 9, 2017, of the Plaintiffs' overpayment.

14. SLS stated that it was "reviewing" the matter, but began reporting the Plaintiffs as delinquent with credit reporting agencies, even though Plaintiffs started making the correct monthly payments of $2,128.74, as required by the 2010 Loan Modification, and no longer were paying the mistaken $2,420.64 overpayment amount. SLS continued reporting Plaintiffs as delinquent, even though SLS already had $17,514.00 in overpayments from the Plaintiffs on the loan that it would not acknowledge or apply to the loan, despite the clear terms of the 2010 Loan Modification. (**Exhibit J**)

15. The 2010 Loan Modification called for a $2,128.74 monthly payment, at 4.5% interest, not a $2,420.64 monthly payment, at 5% interest. Plaintiffs also noted that their debt was not reaffirmed in bankruptcy, so SLS had effectively been collecting an overcharge on a discharged debt for over 5 years. For a period of about 64 months, from September 2012 through December 2017, Plaintiffs had been overpaying by $291.90 per month, totaling $18,681.60. Also, Plaintiffs' monthly payments were not being properly applied to both the principal and the interest, resulting in the principal not being reduced as it should have been. Based upon the correct loan amortization, the principal would have been $39,934.20 lower as of December 2017, if the funds that Plaintiffs paid were properly applied.

16. On November 10, 2017, Plaintiffs filed a complaint against SLS with the Consumer Finance Protection Bureau (hereinafter "CFPB"). (**Exhibit K**) SLS responded to the complaint stating that it "needed more time to review." However, on November 14, 2017, SLS sent a letter to Plaintiffs claiming that Plaintiffs were delinquent, and that SLS had applied all payments to interest, rather than to principal and interest. (**Exhibit L**)

17. The Plaintiffs' original complaint to the CFPB was closed due to SLS needing more

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

time to respond; so, on February 12, 2018, the Plaintiffs filed a second complaint against SLS. On April 13, 2018, SLS wrote a letter responding to the Plaintiffs' two complaints filed with the CFPB, in which SLS's position was that the only effective loan modification was in February of 2009, and that the June 2010 loan modification "was not valid because it was not completed, documents were not executed and returned to [the lender] GMAC by the required deadline, and the modification documents were altered, deeming them invalid." SLS then declined to reimburse the overpayment funds to the Plaintiffs' loan account. Plaintiffs state that SLS's assertions to the CFPB were neither true, nor correct.  Plaintiffs further state that Plaintiffs have fully complied with the terms of the 2010 Loan Modification.

18.     SLS, on the other hand, has failed, and at present is continuing to fail, to follow the terms of the controlling 2010 Loan Modification, resulting in SLS receiving significant overpayments by Plaintiffs on the loan, as if the previous 2009 loan modification were still in effect, and had not been discharged in bankruptcy. SLS also has misapplied Plaintiffs' payments towards interest, rather than the principal and interest, on the loan.  Despite multiple attempts by Plaintiffs to resolve these significant errors—where SLS was trying to apply the 2009 loan modification terms, which had been discharged in bankruptcy, instead of the 2010 Loan Modification terms which actually applied—and a frequent lack of, or delay in, communication from SLS, SLS has thus far refused to compensate Plaintiffs and has baselessly chosen to ignore the 2010 Loan Modification.

19.     On January 18, 2019, a Notice of Default was filed against Plaintiffs. The Notice of Default was filed with reckless regard for the terms of the 2010 Loan Modification and with the intent to harass Plaintiffs with SLS having full knowledge that Plaintiffs have made their loan payments in accordance with the 2010 Loan Modification.

### FIRST CAUSE OF ACTION

### DECLARATORY RELIEF

20.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 19 as though fully set forth herein.

21.     SLS has repeatedly claimed that Plaintiffs have not paid their monthly mortgage

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

payments which is not true. SLS is requiring a higher monthly payment from Plaintiffs—as if the 2009 loan modification terms still applied, even though that debt was discharged in bankruptcy—and simply ignores the payment terms under the 2010 Loan Modification.

22. At this point, Plaintiffs are being harmed because their credit reports reflect delinquent payments, making it difficult for them to qualify for a new loan, as they desire to purchase a new home and sell their current home. In fact, they were recently denied a loan on a new home. As long as this dispute exists, the Plaintiffs cannot qualify for a loan to purchase a new home, and they cannot sell their existing home because of the improper delinquency reports against them made every month by SLS. The recent Notice of Disclosure will impact Plaintiffs' credit for a period of two additional years.

23. SLS's actions create a dispute about the status of Plaintiffs' mortgage, the mortgage payment amount that is due each month, the applicable interest rate, and how the Plaintiffs' mortgage payments to SLS are being applied to principal and interest. SLS's actions also are harming Plaintiffs' credit rating score. As a result, SLS's improper and unfair actions are making it impossible for Plaintiffs to qualify for a new home loan, and/or to sell their current home.

24. SLS refuses to accept the validity of the 2010 Loan Modification agreement between the Plaintiffs and GMAC Mortgage from whom, through a series of successions, were purchased and assumed by SLS when it purchased and assumed the Plaintiffs' loan.

25. SLS's actions create a dispute about the status of the Plaintiffs' existing mortgage loan, the payment that is actually owed, the amount of overpayment the Plaintiffs' have made, how those payments should be applied, and the Plaintiffs' unfair credit rating as delinquent because of SLS actions.

26. In light of the parties' conflicting positions on the validity and applicability of the 2010 Loan Modification, an actual and justiciable controversy exists over the parties' respective rights and obligations as to borrower and lender and their contractual obligations under the loan.

27. The declaratory judgment sought herein would serve a useful purpose in clarifying the legal relations at issue, the amount of the payment due, the applicable interest rate, how the overpayments should be calculated and applied to the mortgage balance, and whether Plaintiffs are

actually delinquent in their monthly payments to SLS. There is no better or more effective alternative remedy because these issues need to be determined and resolved before damages can be correctly calculated and assessed. Plaintiffs have been putting the monthly overage amount ($291.90) in a separate account in good faith in the unlikely event that the Court rules against them.

## SECOND CAUSE OF ACTION

## BREACH OF CONTRACT

### (BREACH OF THE 2010 LOAN MODIFICATION AGREEMENT)

28. Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 27 as though fully set forth herein.

29. Plaintiffs and SLS, through its predecessor-in-interest, GMAC Mortgage, from whom SLS purchased the Plaintiffs' loan, entered into a contract when SLS purchased the Plaintiff's loan, with the then existing 2010 Loan Modification Agreement as part of that loan.

30. Plaintiffs have done all of what is required of them under the terms of the mortgage and the 2010 Loan Modification, and thus have fully performed; and they have even gone above and beyond what is required under the 2010 Loan Modification by making overpayments for more than five years. Thus, Plaintiffs are excused from not continuing to make overpayments to SLS, and are entitled to have the terms of the 2010 Loan Modification Agreement control this dispute.

31. SLS has failed to adhere to the terms of the 2010 Loan Modification and accept Plaintiffs' monthly payments, without reporting Plaintiffs as delinquent, and has failed to apply the Plaintiffs' monthly payments to both principal and interest according to the 2010 Loan Modification.

32. Plaintiffs have been harmed in that they have not received credit for their overpayments, they are considered delinquent by SLS and have had their credit report scores adversely affected (meaning that they now cannot qualify for a loan to purchase a new home), and the principal on their loan has not been amortized down they way it should have been; all of which has resulted in more interest paid on the principal, that actually should have been lower each time a payment was made.

33. SLS's breach of the 2010 Loan Modification Agreement was a substantial factor in

causing Plaintiff's harm; and as such, Plaintiffs are entitled to full compensatory damages.

## THIRD CAUSE OF ACTION

### (BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING)

34. Plaintiff re-allege and incorporate herein by reference paragraphs 1 through 33 as though fully set forth herein.

35. Plaintiffs and SLS, through SLS's predecessor-in-interest, GMAC Mortgage, entered into the parties' 2010 Loan Modification Agreement, the terms of which are controlling.

36. Plaintiffs have performed all their obligations, covenants and conditions required under the 2010 Loan Modification Agreement, and then some, given Plaintiffs' monthly overpayments.

37. SLS has unfairly interfered with the Plaintiffs' right to receive the benefits of the 2010 Loan Modification Agreement and has improperly tried to enforce the more onerous terms of the 2009 loan modification, which was a discharged debt in bankruptcy back in early 2010.

38. Plaintiffs have been harmed and damaged by SLS's improper actions which constitute a breach of the 2010 Loan Modification Agreement between the parties whereby the 2010 Loan Modification called for only a $2,128.74 monthly payment, at 4.5% interest, not a $2,420.64 monthly payment at 5%, which SLS is now charging, and has been declaring Plaintiffs delinquent, and continues to refuse to apply or reimburse any of the Plaintiffs' overpayments to the loan balance as it should.

## FOURTH CAUSE OF ACTION

### FRAUD

39. Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 38 as though fully set forth herein.

40. Plaintiffs are informed, believe, and thereon allege that SLS did knowingly misrepresent to Plaintiffs by way of false representation, concealment, and/or nondisclosure that it was not going to recognize the terms and conditions of the 2010 Loan Modification and instead would charge a higher monthly payment at a higher interest rate that was not in accordance with the 2010 Loan Modification.

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

41.     Plaintiffs are informed, believe, and thereon allege that SLS did knowingly misrepresent to Plaintiffs by way of false representation, concealment, and/or nondisclosure that it would not apply Plaintiffs' payments to both principal and interest, and would instead apply the 2009 loan modification.

42.     Plaintiffs are informed, believe, and thereon allege that SLS did knowingly misrepresent to Plaintiffs by way of false representation, concealment, and/or nondisclosure that it would begin reporting the Plaintiffs as delinquent to credit reporting services and thus harm the Plaintiffs' credit rating so that they could not qualify for another mortgage to finance the purchase of a new home.

43.     Plaintiffs are informed, believe, and thereon allege that SLS did knowingly misrepresent to Plaintiffs by way of false representation, concealment, and/or nondisclosure that it would neither recognize nor apply the Plaintiffs' overpayments to principal and interest and would withhold the Plaintiffs' overpayments, instead of applying them to interest and principal.

44.     Plaintiffs are informed, believe, and thereon allege that SLS did intend to defraud Plaintiffs by way of false representations such that SLS took the overpayments for a period of time and did not inform the Plaintiffs how the payments were being applied, such that the Plaintiffs had to pay more interest and more interest on a principal amount that was not being correctly amortized down in accordance with the terms of the 2010 Loan Modification.

45.     Plaintiffs did justifiably rely upon one or more of SLS's false representations in that Plaintiffs reasonably believed, based upon SLS's experience as a mortgage lender familiar with loan modifications, including loan modification from an existing loan subsequently purchased, that SLS would live up to the 2010 Loan Modification terms, and not apply more onerous 2009 modification terms against the Plaintiffs in breach of the 2010 Loan Modification, and would not give due credit to the Plaintiffs for their monthly overpayments made in accordance with the 2010 Loan Modification.

46.     Further, Plaintiffs did reasonably rely upon SLS's taking of their monthly payments, and that such payments were being correctly applied to principal and interest in accordance with the 2010 Loan Modification. Plaintiffs also reasonably relied upon SLS to ensure that the loan balance

was being correctly amortized down according to the terms of the 2010 Loan Modification.

47. SLS did purposefully and knowingly conceal from Plaintiffs, during the course of the loan, as a lender not in breach of any agreement, that it had actually been making improper payment applications to the principal, as well as reporting Plaintiffs as delinquent to credit bureaus, for SLS's own economic gain and to the detriment of the Plaintiffs. SLS did these actions in the hopes that the Plaintiffs would feel pressured economically to accept the terms of SLS's entirely new and much less favorable loan modification offer to the Plaintiffs.

48. Once the Plaintiffs found out about the overpayments and how they had been misapplied, and that their credit rating was being damaged, SLS had the nerve to offer the Plaintiffs yet another loan modification with very unfavorable terms, to the improper economic gain of SLS. Had Plaintiffs realized SLS's actions and intentions early on, the Plaintiffs would have addressed the issue much earlier before losing so much in principal paydowns and higher interest payments, and would have been able to try to address their credit rating sooner.

49. Based upon SLS's calculated, wrongful, and fraudulent misrepresentations, Plaintiffs have suffered damages in excess of $75,000.00, the exact amount of which shall be proven at trial.

50. SLS's actions rise to the level of despicable conduct. Further, SLS's actions and subsequent reactions have been perpetrated with fraud, oppression, and/or malice, thereby entitling Plaintiffs to recover punitive damages.

## FIFTH CAUSE OF ACTION
## MISREPRESENTATION

51. Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 50 as though fully set forth herein.

52. SLS represented to Plaintiffs that Plaintiffs needed to pay a $2,420.64 monthly payment, at 5% interest, on their mortgage, instead of what Plaintiffs actually should have been paying under the 2010 Loan Modification terms, which was a $2,128.74 monthly payment, at 4.5% interest, and apply those payments to both principal and interest, and not declare the Plaintiffs payments as delinquent.

53. SLS's representations were false. Further, SLS knew that the representation was false

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

when it made it to the Plaintiffs, especially after Plaintiffs had discovered the overpayments and pointed it out to SLS; or at the very least, SLS made its representation recklessly and without regard for its truth.

54. SLS intended that the Plaintiffs rely on the false representation, especially as it tried to coerce the Plaintiffs to enter into a new and equally onerous loan modification with SLS, which Plaintiffs rejected. However, in making their continued overpayments to SLS, Plaintiffs were reasonably relying on SLS's representations.

55. Plaintiffs have been harmed economically as to overcharged interest and payments they have paid and they have been harmed by SLS's failure to properly amortize the principal owed on the loan. Plaintiffs have also been harmed with respect to their credit rating which has been negatively affected by SLS's improper reporting of the Plaintiffs as delinquent. Plaintiffs' reliance on SLS's representation was a substantial factor in causing their harm.

## SIXTH CAUSE OF ACTION

## VIOLATIONS OF BUSINESS AND PROFESSIONS CODE § 17200

## (FALSE ADVERTISING AND UNFAIR COMPETITION)

56. Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 55 as though fully set forth herein.

57. SLS has purposefully misrepresented the Plaintiffs mortgage as being subject to the 2009 loan modification instead of the 2010 Loan Modification, both to the Plaintiffs, and to credit reporting agencies, asserting that the Plaintiffs monthly payments were delinquent, instead of being timely in accordance with the 2010 Loan Modification. SLS did this despite knowing that the 2009 loan modification could not be the operative loan modification as it was discharged in bankruptcy; thereby leaving the 2010 Loan Modification as the only correct and operative mortgage contract.

58. Plaintiffs have been, and continue to be, injured by SLS's improper actions, including taking overage payments and not correctly applying or assessing them, and purposefully reporting the Plaintiffs as delinquent so that SLS could offer a new loan modification on terms detrimental to Plaintiffs, where the Plaintiffs might be forced to accept SLS's offer in order to escape the negative effects of SLS ignoring the 2010 Loan Modification terms as describe above.

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

59. Plaintiffs have suffered injury in fact and have lost money, have lost equity in their home that they would otherwise have if the principal had been amortized correctly, and Plaintiffs have suffered a negative credit rating for allegedly delinquent payments to SLS, which were in fact not delinquent. As a result of such unfair business practices by SLS, Plaintiffs continue to be harmed every day that SLS is engaged in its unfair business practices as described above.

60. SLS's acts and conduct are unfair, unlawful and fraudulent business practices. SLS's acts and practices are also unlawful because they violate Civil Code sections 1750 *et seq* (Consumer Legal Remedies Act).

61. Plaintiffs seek an Order of this Court awarding damages, restitution, disgorgement, injunctive relief and all other relief allowed under §17200, *et seq*.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT

## (CALIFORNIA CIVIL CODE § 1750 et seq)

62. Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 61 as though fully set forth herein.

63. The Consumer Legal Remedies Act (CLRA), California Civil Code sections 1750 *et seq*, applies to SLS's actions and conduct because such actions and conduct pertain to consumer services (home mortgage services market).

64. SLS has engaged in deceptive practices, unlawful methods of competition and/or unfair acts as defined by Civ. Code §1770, to the detriment of Plaintiffs.

65. Plaintiffs have suffered harm as a proximate result of the violations of law and wrongful conduct of SLS alleged herein.

66. SLS intentionally and unlawfully perpetrated harm upon Plaintiffs by the above described acts.

67. SLS's improper and unfair and deceptive actions are unconscionable and violate Civil Code section 1770(a)(19).

68. SLS's unilateral decision to ignore the 2010 Loan Modification and instead attempt to assert that the 2009 loan modification, which was discharged in bankruptcy, to be applicable, and

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

attempting to use such practices to coerce the Plaintiffs into accepting a new and very detrimental loan modification agreement, is unconscionable and violates Civil Code section 1770(a)(19).

69. SLS's deceptive acts and omissions and unfair business practices occurred in the course of providing a consumer service and violate Civil Code section 1770(a).

70. As a direct and proximate result of SLS's violations of the CLRA, Plaintiffs have suffered harm.

71. SLS's policies and practices are unlawful, unethical, oppressive, fraudulent and malicious. The gravity of the harm to all consumers from SLS's policies and practices far outweighs any purported utility those policies and practices have.

72. Plaintiffs are entitled to (a) declaratory and injunctive relief (b) actual damages; (c) restitution of money to Plaintiffs; (d) restoration of Plaintiffs' good credit rating as not delinquent in their payments; (e) punitive damages; (f) attorneys' fees and costs; and (g) other relief that this Court deems proper.

### EIGHTH CAUSE OF ACTION
### UNFAIR BUSINESS PRACTICE
### (CAL. BUS. & PROF. CODE § 17200 *et seq.*)

73. Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 72 as though fully set forth herein.

74. As described above, SLS has engaged in a deliberate campaign to undermine the terms of the 2010 Loan Modification and thereby subject the Plaintiffs to the more onerous terms of the 2009 loan modification, which is a debt that was discharged in bankruptcy, and would subject the Plaintiffs to higher monthly payments, a higher interest rate, less amortization of the principal on the loan, while also subjecting the Plaintiffs to a bad credit rating due to incorrect reporting of them being delinquent in their payments, when they have in fact made their payments, and for over 5 years during the course of the loan, have actually made overpayments on the loan.

75. SLS's wrongful acts as described above were carried out in the ordinary course of business. SLS's acts constitute unlawful, unfair, and fraudulent business acts and practices in violation of California Business and Professions Code *Section* 17200 *et seq.*

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

76.     As a direct and proximate result of SLS's illegal activities, Plaintiffs have suffered damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

A.      For declaratory and injunctive relief, as follows: An order enjoining SLS from applying the terms of the 2009 loan modification, both retroactively and prospectively, and enjoining SLS from applying the terms of the 2009 loan modification which was a debt discharged in bankruptcy and for declaratory and injunctive relief to remove the Notice of Default recorded against Plaintiffs;

B.      An order requiring SLS to apply all of Plaintiffs overpayments to the principal and interest on the loan under the terms of 2010 Loan Modification;

C.      An order requiring SLS to reimburse all of Plaintiffs' past overpayments or apply them to the principal and interest on the loan under the terms of the 2010 Loan Modification pursuant to the loan having been subject at all times to the 2010 Loan Modification after it went into effect;

D.      An order requiring SLS to strictly adhere to the terms and covenants of the 2010 Loan Modification and refrain from reporting Plaintiffs as delinquent to credit reporting agencies and to remove forthwith all negative statements that have been made against Plaintiffs in order to restore their credit rating to what it would have been had the 2010 Loan Modification been in effect at all times.

E.      For declaratory judgment in favor of Plaintiffs, and against SLS, for damages in such amounts as may be proven at trial;

F.      For judgment in favor of Plaintiffs, and against SLS, for actual damages suffered by Plaintiffs pursuant to Cal. Civ. Code § 1720 *et seq* and 1750 *et seq*;

G.      For punitive damages;

H.      For attorneys' fees and costs;

I.      For such other relief as the Court may deem just and proper.

///

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

**JURY DEMAND**

Plaintiffs demand a trial by jury

Dated: January 25, 2019                    GAVRILOV & BROOKS

/s/ J. Edward Brooks
J. Edward Brooks
Ognian Gavrilov
Eliezer Cohen
Attorneys for Plaintiffs
EDMUND RYAN and PATRICIA HOFFMAN

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**